



FILED

NOV 0 3 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>JEFFREY ALLEN ABEL,<br>BRANDON JAMAL BALDWIN,<br>LINDA ANN BEEN,<br>AMERICA JABRIELLE VOSHA<br>BROWN,<br>AMBER MARIE CLAYSON,<br>AMBER CHARDA CRAWFORD,<br>TONI LARAE CRISP,<br>LATOYA EFFIE LAWSHAWN<br>DUHART,<br>DEREK JAMES ENLOE,<br>COREY RAY FIELDS,<br>SHAREE NASHAWN GALLOWAY,<br>ASHLEY NICOLE GILL,<br>BRITTANY NICOLE HARKINS,<br>JESSICA MARIE HOOKS,<br>STEPHEN ANTHONY JENNINGS,<br>AMANDA JOHNSON,<br>BILLY DON OSBORNE,<br>JUSTON PAUL OSBORNE,<br>DANIEL EUGENE PAYNE,<br>TAILYR MAEGAN PAYNE,<br>KATRINA DANIELLE ROBISON,<br>KARISSA RAY RUSSELL,<br>GE'RAE QUIN'SHAY THOMPSON,<br><br>**Defendants.** | **FILED UNDER SEAL**<br><br>Case No. **21 CR 49 3 GKF**<br><br>[COUNT ONE: 18 U.S.C. §§ 371 and 2 – Conspiracy;<br>COUNTS TWO through ONE HUNDRED SIXTY-SIX: 18 U.S.C. § 1343 – Wire Fraud;<br>COUNT ONE HUNDRED SIXTY-SEVEN: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;<br>COUNTS ONE HUNDRED SIXTY-EIGHT and ONE HUNDRED SIXTY-NINE: 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering;<br>COUNTS ONE HUNDRED SEVENTY through TWO HUNDRED FOURTEEN: 18 U.S.C. § 1957(a) – Relating to Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity;<br>FORFEITURE ALLEGATION: 18 U.S.C. §§ 981(a)(1)(c) and 982(a) and 28 U.S.C. § 2461 – Conspiracy, Fraud, and Racketeering Forfeiture] |

## THE GRAND JURY CHARGES:

1

## COUNT ONE
### [18 U.S.C. §§ 371 and 2]

### INTRODUCTION

1.  As used in the Indictment, the following terms have the following meanings:

2.  A "booster" is a person who steals goods and merchandise, specifically, but not limited to over-the-counter medication ("OTC") from retail stores.

3.  A "fence" or "fencing operation" is a person, organization or entity that purchases or receives stolen goods and merchandise from boosters. The fence or fencing operation then re-sells the stolen goods and merchandise to third parties.

4.  "OTC" is medicine that does not require a prescription and includes non-prescription personal hygiene products that can be readily sold in a secondary market. OTC includes, but is not limited to, the following products: Allegra, Prevagen, Zantac, Rogaine, Zyrtec, Viviscal, Mucinex, Claritin, Culturelle, Flonase, Nasacort, and assorted vitamin products.

5.  "Mobile Payment Services" are payment services operated under financial regulation and performed from or via a mobile device. Mobile Payment Services include the following:

   a.  "PayPal" is an online payments system operated by PayPal Holdings, Inc. that supports online money transfers, and serves as an electronic alternative to traditional paper methods such as checks and money orders.

2

b. "Venmo" is a mobile payment service owned by PayPal.

c. "CashApp" is a mobile payment service operated by Square, Inc. that allows users to transfer money to one another using a mobile phone application.

## THE CONSPIRACY AND ITS OBJECTS

6. From in or about January 2018 to the date of this Indictment, in the Northern District of Oklahoma and elsewhere, the defendants, **JEFFREY ALLEN ABEL ("ABEL"), BRANDON JAMAL BALDWIN ("BALDWIN"), LINDA ANN BEEN ("BEEN"), AMERICA JABRIELLE VOSHA BROWN ("BROWN"), AMBER MARIE CLAYSON ("CLAYSON"), AMBER CHARDA CRAWFORD ("CRAWFORD"), TONI LARAE CRISP ("CRISP"), LATOYA EFFIE LAWSHAWN DUHART ("DUHART"), DEREK JAMES ENLOE ("ENLOE"), COREY RAY FIELDS ("FIELDS"), SHAREE NASHAWN GALLOWAY ("GALLOWAY"), ASHLEY NICOLE GILL ("GILL"), BRITTANY NICOLE HARKINS ("HARKINS"), JESSICA MARIE HOOKS ("HOOKS"), STEPHEN ANTHONY JENNINGS ("JENNINGS"), AMANDA JOHNSON ("JOHNSON"), BILLY DON OSBORNE ("B. OSBORNE"), JUSTON PAUL OSBORNE ("J. OSBORNE"), DANIEL EUGENE PAYNE ("D. PAYNE"), TAILYR MAEGAN PAYNE ("T. PAYNE"), KARISSA RAY RUSSELL ("RUSSELL"), KATRINA DANIELLE ROBISON ("ROBISON"), and GE'RAE QUIN'SHAY THOMPSON ("THOMPSON")**, did knowingly and

3

willfully conspire, confederate, and agree, with each other and others, known and unknown to the Grand Jury (collectively, the "Conspirators"), to commit certain offenses against the United States, that is,

     a.  to violate Title 18, United States Code, Section 2314, by transporting, transmitting, and transferring in interstate commerce goods, wares, and merchandise, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, as described below;

     b.  to violate Title 18, United States Code, Section 2315, by receiving, possessing, concealing, storing, bartering, selling, and disposing of any goods, wares, and merchandise, of the value of $5,000 or more, which had crossed a State boundary after being stolen, unlawfully converted, and taken, knowing the same to have been stolen, unlawfully converted, and taken, as described below.

<b><u>THE PURPOSE OF THE CONSPIRACY</u></b>

7.  The purpose of the Conspiracy was for the Conspirators to unlawfully enrich themselves by stealing goods, wares, and merchandise, including OTC items, from retail stores and pharmacies within the Northern District of Oklahoma and elsewhere, and selling the goods, wares, and merchandise to fences and fencing operations outside the state of Oklahoma.

4

## MANNER AND MEANS OF THE CONSPIRACY

### BEEN's Origins with Online Retail

8. It was part of the Conspiracy that the Conspirators used the following manner and means to accomplish the Conspiracy:

9. Between approximately 2015 and 2018, **BEEN** was married to "C.B.," a person known to the Grand Jury, who maintained and operated an eBay account under the account name "Super C Deals."

10. In or about 2016, "A.Y.," a person known to the Grand Jury, introduced **BEEN** to the practice of purchasing and reselling stolen merchandise acquired from boosters.

11. In or about 2016, **BEEN** began utilizing the Super C Deals eBay account to sell merchandise she obtained from boosters.

12. Through her use of eBay, **BEEN** became acquainted with various fences and fencing operations located throughout the United States who were interested in purchasing stolen merchandise in bulk quantities.

13. Using the Super C Deals account, **BEEN** sold bulk quantities of stolen OTC, at prices below market value, to various fencing operations located throughout the United States.

## The Conspirators Acquisition of Stolen Property

14. To keep up with growing demand from fences, beginning in or about January 2018, **BEEN** and other Conspirators, including **JENNINGS**, **ROBISON** and **RUSSELL**, recruited additional boosters to help her obtain product.

15. Fences would email and text message **BEEN** detailed lists of items and prices they would pay for each.

16. Fences generally agreed to pay **BEEN** half the retail value of any given item. In turn, **BEEN** generally paid boosters half the amount she expected to receive from fences for the item.

17. **BEEN**, through emails and text messages, provided boosters with detailed lists of the items she wanted and the amount she would pay for each item, and instructed boosters on stores to target.

18. Boosters targeted the following stores and pharmacies for theft: Sam's Club, CVS, Akin's Natural Foods, GNC, Reasors, Sprouts, Target, Walmart, Walgreen's, and others.

19. **BEEN** would sometimes drive and accompany boosters to retail stores around Tulsa and elsewhere to steal products at her direction.

20. Boosters travelled outside the state of Oklahoma to commit thefts in states including Kansas, Texas, Missouri, Arkansas, Colorado, and others.

21. When boosters traveled outside of Oklahoma to engage in thefts, **BEEN** sent payments via Mobile Payment Platforms to assist with the boosters' travel expenses, including gas, food, and lodging.

22. Boosters entered targeted businesses, concealed and seized inventory, and exited points of sale without paying for seized products.

23. Boosters engaged in "box-stuffing," namely, concealing high value items inside a lower-valued item box, and only paying for the lower-valued item, thus absconding with the concealed items.

24. After stealing items, boosters delivered products to **BEEN** at various locations, including, but not limited to:

    a. **BEEN's** residence at the Canyon Creek RV Park in Tulsa, Oklahoma;

    b. **BEEN's** residence at the Edgewater Mobile Home Park in Cleveland, Oklahoma;

    c. C&B Welding and Fabrication, a business warehouse located in Sand Springs, Oklahoma, and operated by **B. OSBORNE** and **FIELDS**; and

    d. **J. OSBORNE's** residence in Sand Springs, Oklahoma.

25. **BEEN** used cash and Mobile Payment Platforms, including Venmo, CashApp, and PayPal, to pay boosters for stolen property.

26. When boosters were arrested by law enforcement for theft or larcenies, **BEEN** facilitated bond payments for their release, thereby allowing boosters to continue stealing in furtherance of the Conspiracy.

7

27. If **BEEN** was unable to secure a booster's release from jail through bond, **BEEN** would provide money to the individual's jail commissary account and family members to deter a booster's cooperation with law enforcement.

### The Conspirators' Interstate Sale of Stolen Property

28. After obtaining stolen products from boosters, **BEEN** and other Conspirators, including **B. OSBORNE, J. OSBORNE, FIELDS**, and **JOHNSON**, stored the inventory in preparation for shipment to fencing operations.

29. The Conspirators organized stolen inventory in preparation for interstate shipment at storage locations, including both the C&B Welding and Fabrication warehouse and Suburban Revival Boutique, a retail store located in Sand Springs, Oklahoma, controlled and operated by **JOHNSON**.

30. **BEEN** coordinated shipment of the items to fencing operations located outside the state of Oklahoma, as follows:

    a. **BEEN**, and others known to the Grand Jury, prepared invoices identifying products to be shipped to the fencing operations, and sent the invoices to the fencing operations through e-mail and other electronic communications;

    b. Fences sent **BEEN** payment for the anticipated inventory through Mobile Payment Platforms;

    c. **BEEN** coordinated interstate shipments of stolen property to fences through various freight companies;

d. Conspirators, including **B. OSBORNE**, **FIELDS**, and **J. OSBORNE** organized pallets of inventory for delivery to contracted freight companies; and

e. Contracted freight companies received pallets of inventory from the Conspirators' storage locations for delivery to fencing operations.

31. **BEEN** received approximately $4.5 million in payments from fencing operations for shipment of stolen property.

## OVERT ACTS

32. In furtherance of the Conspiracy, the Conspirators committed, in the Northern District of Oklahoma and elsewhere, one or more of the following acts:

33. On or about January 13, 2019, **ENLOE** stole miscellaneous OTC and health and beauty products, including Nicorette Gum, Viviscal hair growth product, and Xyzal allergy medications, from Walmart at 2301 West Kenosha Street, Broken Arrow, Oklahoma.

34. On or about March 31, 2019, **BEEN** drove "C.F" and "J.G", boosters known to the Grand Jury, from Tulsa, Oklahoma to Oklahoma City, Oklahoma with the intent to steal targeted OTC from retail stores.

35. On or about March 31, 2019, **BEEN**, C.F and J.G stole OTC items from CVS at 5025 North May Avenue, Oklahoma City, Oklahoma.

36. On or about March 31, 2019, **BEEN** drove C.F. and J.G. to Target at 5400 North May, Oklahoma City, Oklahoma.

37. On or about March 31, 2019, C.F. and J.G. stole approximately 300 boxes of targeted OTC products, including Mucinex, Claritin, Zyrtec, Flonase and Frontline, valued at $2,480, from Target at 5400 North May Avenue, Oklahoma City, Oklahoma to provide to **BEEN**.

38. On or about May 25, 2019, **CRAWFORD** stole Crest White strips, valued at approximately $3,374.27, from Target at 10711 East 71st Street, Tulsa, Oklahoma.

39. On or about June 10, 2019, **BEEN** caused approximately $2,000 to be transferred through PayPal to **ROBISON** for the payment of stolen OTC.

40. On or about July 8, 2019, **CRAWFORD** attempted to steal approximately $2,552 worth of OTC, including Mucinex and Zyrtec, utilizing the box stuffing method described herein, from Sam's Club located at 4420 South Sheridan Road, Tulsa, Oklahoma.

41. On or about July 23, 2019, **CRAWFORD** and an unknown female stole OTC products, including Alli weight loss supplements and Nicorette gum, valued at approximately $704.88, from the Target located at 9010 N. 121 East Avenue in Owasso, Oklahoma.

42. On or about July 31, 2019, **BEEN** caused approximately $2,000 to be transferred through PayPal to **ROBISON** for the payment of stolen OTC.

43. On or about August 9, 2019, **RUSSELL** and **JENNINGS** drove from Tulsa, Oklahoma, to Arlington, Texas, with the intent to steal OTC products for **BEEN**.

44. On or about August 9, 2019, **RUSSELL** and **JENNINGS** stole eight boxes of SeroVital dietary supplements and 88 boxes of Frontline flea treatment, valued at approximately $7,535.04, from Costco located at 600 West Arbrook Boulevard, Arlington, Texas.

45. On or about September 4, 2019, **BEEN** caused approximately $2,344 to be transferred through PayPal to **RUSSELL** for the payment of stolen OTC.

46. On or about September 4, 2019, **DUHART**, **CLAYSON** and two uncharged co-conspirators stole OTC products, including Flonase, Mucinex, Nexium, Zegrid, Allegra, valued at approximately $1,329.07, from Reasors located at 446 South Elm Street, Jenks, Oklahoma.

47. On or about September 5, 2019, **BEEN** caused approximately $200 to be transferred through CashApp to **DUHART** for the payment of stolen OTC.

48. On or about September 15, 2019, **BEEN** caused approximately $705 to be transferred through CashApp to **DUHART** for the payment of stolen OTC.

49. On or about September 17, 2019, **BEEN** caused approximately $602 to be transferred through CashApp to **DUHART** for the payment of stolen OTC.

50. On or about November 2, 2019, **CLAYSON** and **T. PAYNE** stole approximately $1,500 of vitamin products, including fish oil supplements, from Natural Grocers located at 3126 South Harvard, Tulsa, Oklahoma.

51. On or about November 3, 2019, **BEEN** caused approximately $105 to be transferred through CashApp to **T. PAYNE** for the payment of stolen OTC.

11

52. On or about November 4, 2019, **BEEN** caused approximately $276 to be transferred though CashApp to **T. PAYNE** for the payment of OTC.

53. On or about November 13, 2019, **BEEN** caused approximately $1,064 to be transferred through PayPal to **D. PAYNE** for the payment of stolen OTC.

54. On or about November 23, 2019, **BEEN** caused approximately $834 to be transferred through CashApp to **DUHART** for the payment of stolen OTC.

55. On or about November 28, 2019, **T. PAYNE** stole approximately $553 worth of Abreva from CVS located at 7041 South Yale Avenue, Tulsa, Oklahoma.

56. On or about December 1, 2019, **BEEN** caused approximately $105 to be transferred through CashApp to **T. PAYNE** for the payment of stolen OTC.

57. On or about December 30, 2019, **BEEN** caused approximately $400 to be transferred through Venmo to **CLAYSON** for the payment of stolen OTC.

58. On or about January 21, 2020, **HOOKS** stole approximately $500 worth of beauty products, including Prilosec, Nexium and Flonase, from Walgreen's located at 11650 East 86th Street North, Owasso, Oklahoma.

59. On or about February 4, 2020, **T. PAYNE** stole OTC medications, valued at approximately $1,500, from CVS located at 2110 South Harvard Avenue in Tulsa, Oklahoma.

60. On or about February 6, 2020, **HOOKS** and an unknown coconspirator stole OTC and health and beauty items, including Claritin, Flonase and Abreva, valued at

approximately $4,333.46, from Walgreen's located at 950 East Kenosha Street, Broken Arrow, Oklahoma.

61. On or about February 8, 2020, **D. PAYNE** drove to Sam's Club located at 4420 South Sheridan Road in Tulsa, Oklahoma with the intent to steal targeted products for **BEEN**.  Upon entering the store, **D. PAYNE**, using the box-stuffing tactic discussed herein, stole approximately $1,116.51 of miscellaneous OTC medications and other products, including whitening strips and Phillips Norelco shavers.

62. On or about February 12, 2020, **BEEN** caused approximately $500 to be transferred through PayPal to **HARKINS** for the payment of stolen OTC.

63. On or about February 14, 2020, **BEEN** caused approximately $250 to be transferred through PayPal to **HARKINS** for the payment of stolen OTC.

64. On or about February 14, 2020, **D. PAYNE** stole Gillette razors, hair dryers and eye drops, valued at approximately $1,299.86, utilizing the box stuffing method discussed herein, from Sam's Club at 7757 South Olympia Avenue, Tulsa, Oklahoma.

65. On or about February 16, 2020, **D. PAYNE** stole beauty products and OTC, including electronic toothbrushes, vitamins, Allegra and Crest Whitening Strips, valued at approximately $701, utilizing the box stuffing method discussed herein, from Sam's Club located at 4420 South Sheridan Road, Tulsa, Oklahoma.

66. On or about February 18, 2020, **D. PAYNE** stole OTC, including Irwin Naturals vitamins and supplements, valued at approximately $302.72, from Sam's Club located at 6922 S. Mingo Road, Tulsa, Oklahoma.

67. On or about February 24, 2020, **BEEN** caused approximately $292 to be transferred through CashApp to **HOOKS** for the payment of stolen OTC.

68. On or about February 29, 2020, **BEEN** caused approximately $1,845 to be transferred through PayPal to **D. PAYNE** for the payment of stolen OTC.

69. On or about March 3, 2020, **T. PAYNE** stole OTC, including vitamins, valued at approximately $1,041 from CVS located at 4107 South Harvard Avenue, Tulsa, Oklahoma.

70. On or about March 5, 2020, **T. PAYNE** and an unknown female stole OTC, valued at approximately $400, from CVS located at 2110 South Harvard Avenue, Tulsa, Oklahoma.

71. On or about March 7, 2020, **BEEN** caused approximately $105 to be transferred through PayPal to **T. PAYNE** for the payment of stolen OTC.

72. On or about March 11, 2020, **BEEN** caused approximately $400 to be transferred through PayPal to **T. PAYNE** for the payment of stolen OTC.

73. On or about March 11, 2020, **CLAYSON** and other uncharged co-conspirators attempted to steal OTC merchandise from Walgreens located at 11332 East 31st Street in Tulsa, Oklahoma.

14

74. On or about March 16, 2020, **BEEN** caused approximately $200 to be transferred through CashApp to **HOOKS** for the payment of stolen OTC.

75. On or about March 20, 2020, **CRAWFORD** and another unidentified male and female stole multiple OTC, including Mucinex, valued at approximately $738, from Sam's Club located at 4420 South Sheridan Road in Tulsa, Oklahoma.

76. On or about March 24, 2020, **CRISP** concealed and stole Curamed vitamins, valued at approximately $444.88, from Akin's Natural Foods located at 7807 East 51st Street in Tulsa, Oklahoma.

77. On or about March 24, 2020, **BEEN** caused approximately $75 to be transferred to **CRISP** through CashApp for the payment of stolen OTC.

78. On or about March 31, 2020, **BEEN** caused approximately $200 to be transferred through CashApp to **JOHNSON** to facilitate the storage of stolen OTC at the Suburban Revival Boutique.

79. On or about May 12, 2020, **BEEN** caused approximately $400 to be transferred through PayPal to **BALDWIN** for the payment of stolen OTC.

80. On or about June 8, 2020, **BEEN** caused approximately $1,000 and $650 to be transferred through PayPal and approximately $350 to be transferred through CashApp to **HARKINS** for the payment of stolen OTC.

81. On or about August 1, 2020, **CRISP** and an uncharged co-conspirator attempted to steal approximately $411.05 of OTC, including probiotics, from Sprouts located at 24 East 2nd Street, Edmond, Oklahoma.

82. On or about August 7, 2020, **GILL** stole multiple items of OTC from Sam's Club at 6922 South Mingo Road in Tulsa, Oklahoma.

83. On or about August 12, 2020, **BROWN** and **THOMPSON** drove from Tulsa, Oklahoma, to Oklahoma City, Oklahoma, with the intent to steal targeted OTC for **BEEN**.

84. On or about August 12, 2020, **BROWN** and **THOMPSON** stole multiple items of OTC, including Mucinex, Claritin, Allegra, Flonase and Zyrtec, valued at approximately $1,640.36, from Walgreen's located at 1201 Northwest 12th Street, Moore, Oklahoma.

85. On or about August 12, 2020, **BROWN, THOMPSON**, and a juvenile co-conspirator stole multiple items of OTC, including Plan B and Flonase, valued at approximately $1,657.58, from Walgreen's located at 1041 Southwest 19th Street, Moore, Oklahoma.

86. On or about August 14, 2020, **BALDWIN** was in possession of approximately $400 worth of various stolen OTC with the intent to sell it to **BEEN**.

87. On or about August 16, 2020, **THOMPSON, BROWN** and a juvenile co-conspirator stole multiple OTC items, including Prilosec and Nexium, valued at approximately $395.86, from Walgreen's located at 2100 West Britton Road in Oklahoma City, Oklahoma.

88. On or about September 24, 2020, **BEEN** caused approximately $500 to be transferred through CashApp to **JOHNSON** to facilitate the storage of stolen OTC at Suburban Revival Boutique.

89. On or about December 22, 2020, **BROWN** and an uncharged co-conspirator drove from Tulsa, Oklahoma to Grapevine, Texas, in a 2005 Acura registered to **BEEN** with the intent to steal targeted OTC from Texas retail stores for **BEEN**.

90. On or about January 11, 2021, **BEEN** caused approximately $370 to be transferred through CashApp to **ENLOE** for the payment of stolen OTC.

All in violation of Title 18, United States Code, Sections 371 and 2.

## COUNTS TWO ~~through~~ ONE HUNDRED SIXTY-SIX
### [18 U.S.C. § 1343]

### INTRODUCTION

91. The Grand Jury hereby incorporates and realleges paragraphs 1 through 90 of this Indictment.

92. On or about the dates stated below, in the Northern District of Oklahoma and elsewhere, Defendants **LINDA ANN BEEN ("BEEN"), BRANDON JAMAL BALDWIN ("BALDWIN"), AMBER MARIE CLAYSON ("CLAYSON"), AMBER CHARDA CRAWFORD ("CRAWFORD"), TONI LARAE CRISP ("CRISP"), LATOYA EFFIE LAWSHAWN DUHART ("DUHART"), DEREK JAMES ENLOE ("ENLOE"), SHAREE NASHAWN GALLOWAY ("GALLOWAY"), BRITTANY NICOLE HARKINS ("HARKINS"), JESSICA MARIE HOOKS ("HOOKS"), AMANDA JOHNSON ("JOHNSON"), JUSTON PAUL OSBORNE ("J. OSBORNE"), DANIEL EUGENE PAYNE ("D. PAYNE"), TAILYR MAEGAN PAYNE ("T. PAYNE"), KARISSA RAY RUSSELL ("RUSSELL")** and **KATRINA DANIELLE ROBISON ("ROBISON"),** as specified in the Payor and Payee columns in the table below, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, as described in paragraphs 1 through 90 of this Indictment, the allegations of which are incorporated into these Counts by reference ("the Scheme"), knowingly transmitted, and caused to be transmitted, writings,

signs, signals, pictures, and sounds by means of wire communications in interstate

commerce for the purpose of executing the Scheme, as described below. The wire

communications described below were payments from **BEEN**, specifically, electronic

funds transfers coordinated by **BEEN** through Mobile Payment Services, in the

approximate amounts stated below:

| Count | Date | Payor | Payee | Amount | Payment Platform |
|-------|------|-------|-------|--------|------------------|
| 2 | 06/10/2019 | **BEEN** | **ROBISON** | $2,000.00 | PayPal |
| 3 | 07/31/2019 | **BEEN** | **ROBISON** | $2,000.00 | PayPal |
| 4 | 08/12/2019 | **BEEN** | **ROBISON** | $2,500.00 | PayPal |
| 5 | 08/23/2019 | **BEEN** | **CRAWFORD** | $270.00 | PayPal |
| 6 | 08/25/2019 | **BEEN** | **CRAWFORD** | $100.00 | PayPal |
| 7 | 08/25/2019 | **BEEN** | **D. PAYNE** | $500.00 | PayPal |
| 8 | 08/26/2019 | **BEEN** | **CRAWFORD** | $150.00 | PayPal |
| 9 | 08/29/2019 | **BEEN** | **DUHART** | $290.00 | Venmo |
| 10 | 08/30/2019 | **BEEN** | **CRAWFORD** | $100.00 | PayPal |
| 11 | 09/01/2019 | **BEEN** | **CRAWFORD** | $20.00 | PayPal |
| 12 | 09/04/2019 | **BEEN** | **CRAWFORD** | $150.00 | CashApp |
| 13 | 09/04/2019 | **BEEN** | **RUSSELL** | $2,344.00 | PayPal |
| 14 | 09/05/2019 | **BEEN** | **CRAWFORD** | $808.00 | CashApp |
| 15 | 09/06/2019 | **BEEN** | **CRAWFORD** | $200.00 | CashApp |
| 16 | 09/07/2019 | **BEEN** | **CRAWFORD** | $200.00 | CashApp |
| 17 | 09/07/2019 | **BEEN** | **CRAWFORD** | $200.00 | CashApp |
| 18 | 09/08/2019 | **BEEN** | **CRAWFORD** | $300.00 | CashApp |
| 19 | 09/09/2019 | **BEEN** | **CRAWFORD** | $300.00 | CashApp |
| 20 | 09/11/2019 | **BEEN** | **CRAWFORD** | $280.00 | CashApp |
| 21 | 09/12/2019 | **BEEN** | **CRAWFORD** | $100.00 | CashApp |
| 22 | 09/14/2019 | **BEEN** | **CRAWFORD** | $20.00 | CashApp |
| 23 | 09/15/2019 | **BEEN** | **CRAWFORD** | $400.00 | CashApp |
| 24 | 09/15/2019 | **BEEN** | **RUSSELL** | $1,820.00 | PayPal |
| 25 | 09/15/2019 | **BEEN** | **DUHART** | $705.00 | CashApp |
| 26 | 09/16/2019 | **BEEN** | **CRAWFORD** | $300.00 | CashApp |
| 27 | 09/21/2019 | **BEEN** | **DUHART** | $581.00 | CashApp |
| 28 | 09/22/2019 | **BEEN** | **CRAWFORD** | $635.00 | CashApp |
| 29 | 09/22/2019 | **BEEN** | **RUSSELL** | $1,445.00 | PayPal |
| 30 | 09/26/2019 | **BEEN** | **DUHART** | $512.00 | CashApp |

| Count | Date | Payor | Payee | Amount | Payment Platform |
|---|---|---|---|---|---|
| 31 | 10/09/2019 | BEEN | D. PAYNE | $418.00 | PayPal |
| 32 | 10/11/2019 | BEEN | RUSSELL | $1,200.00 | PayPal |
| 33 | 10/13/2019 | BEEN | DUHART | $506.00 | CashApp |
| 34 | 10/22/2019 | BEEN | DUHART | $623.00 | CashApp |
| 35 | 10/25/2019 | BEEN | DUHART | $500.00 | CashApp |
| 36 | 10/29/2019 | BEEN | D. PAYNE | $1,164.00 | PayPal |
| 37 | 10/31/2019 | BEEN | T. PAYNE | $141.50 | CashApp |
| 38 | 11/01/2019 | BEEN | T. PAYNE | $50.00 | CashApp |
| 39 | 11/02/2019 | BEEN | DUHART | $558.00 | CashApp |
| 40 | 11/03/2019 | BEEN | T. PAYNE | $105.00 | CashApp |
| 41 | 11/04/2019 | BEEN | T. PAYNE | $276.00 | CashApp |
| 42 | 11/04/2019 | BEEN | ROBISON | $2,082.00 | PayPal |
| 43 | 11/09/2019 | BEEN | T. PAYNE | $25.00 | CashApp |
| 44 | 11/09/2019 | BEEN | T. PAYNE | $100.00 | CashApp |
| 45 | 11/13/2019 | BEEN | D. PAYNE | $1,064.00 | PayPal |
| 46 | 11/16/2019 | BEEN | DUHART | $843.00 | CashApp |
| 47 | 11/22/2019 | BEEN | T. PAYNE | $50.00 | CashApp |
| 48 | 11/22/2019 | BEEN | DUHART | $628.00 | CashApp |
| 49 | 11/23/2019 | BEEN | T. PAYNE | $50.00 | CashApp |
| 50 | 11/24/2019 | BEEN | DUHART | $834.00 | CashApp |
| 51 | 11/26/2019 | BEEN | T. PAYNE | $150.00 | CashApp |
| 52 | 12/01/2019 | BEEN | T. PAYNE | $105.00 | CashApp |
| 53 | 12/04/2019 | BEEN | T. PAYNE | $50.00 | CashApp |
| 54 | 12/06/2019 | BEEN | T. PAYNE | $630.00 | CashApp |
| 55 | 12/06/2019 | BEEN | GALLOWAY | $660.00 | CashApp |
| 56 | 12/08/2019 | BEEN | T. PAYNE | $120.00 | CashApp |
| 57 | 12/09/2019 | BEEN | T. PAYNE | $612.00 | CashApp |
| 58 | 12/11/2019 | BEEN | DUHART | $630.50 | CashApp |
| 59 | 12/11/2019 | BEEN | GALLOWAY | $1,252.00 | CashApp |
| 60 | 12/13/2019 | BEEN | T. PAYNE | $100.00 | CashApp |
| 61 | 12/17/2019 | BEEN | T. PAYNE | $150.00 | CashApp |
| 62 | 12/18/2019 | BEEN | HARKINS | $232.00 | CashApp |
| 63 | 12/30/2019 | BEEN | CLAYSON | $400.00 | Venmo |
| 64 | 01/10/2020 | BEEN | HARKINS | $360.00 | CashApp |
| 65 | 01/13/2020 | BEEN | HARKINS | $200.00 | CashApp |
| 66 | 01/14/2020 | BEEN | JOHNSON | $100.00 | CashApp |
| 67 | 01/21/2020 | BEEN | JOHNSON | $125.00 | CashApp |
| 68 | 02/12/2020 | BEEN | HARKINS | $500.00 | PayPal |

| Count | Date | Payor | Payee | Amount | Payment Platform |
|---|---|---|---|---|---|
| 69 | 02/12/2020 | BEEN | DUHART | $500.00 | CashApp |
| 70 | 02/13/2020 | BEEN | HARKINS | $80.00 | PayPal |
| 71 | 02/14/2020 | BEEN | HARKINS | $250.00 | PayPal |
| 72 | 02/24/2020 | BEEN | HOOKS | $292.00 | CashApp |
| 73 | 02/26/2020 | BEEN | JOHNSON | $144.00 | CashApp |
| 74 | 02/29/2020 | BEEN | D. PAYNE | $1,845.00 | PayPal |
| 75 | 03/02/2020 | BEEN | HOOKS | $397.00 | CashApp |
| 76 | 03/03/2020 | BEEN | HOOKS | $309.00 | CashApp |
| 77 | 03/04/2020 | BEEN | HOOKS | $328.00 | CashApp |
| 78 | 03/06/2020 | BEEN | JOHNSON | $168.00 | CashApp |
| 79 | 03/07/2020 | BEEN | T. PAYNE | $105.00 | PayPal |
| 80 | 03/11/2020 | BEEN | T. PAYNE | $400.00 | PayPal |
| 81 | 03/16/2020 | BEEN | HOOKS | $200.00 | CashApp |
| 82 | 03/20/2020 | BEEN | GALLOWAY | $684.00 | PayPal |
| 83 | 03/22/2020 | BEEN | GALLOWAY | $1,070.00 | PayPal |
| 84 | 03/23/2020 | BEEN | CRISP | $75.00 | CashApp |
| 85 | 03/23/2020 | BEEN | HOOKS | $200.00 | CashApp |
| 86 | 03/25/2020 | BEEN | CRISP | $75.00 | CashApp |
| 87 | 03/31/2020 | BEEN | JOHNSON | $200.00 | CashApp |
| 88 | 04/02/2020 | BEEN | CRISP | $25.00 | CashApp |
| 89 | 04/05/2020 | BEEN | HARKINS | $241.00 | PayPal |
| 90 | 04/06/2020 | BEEN | CRISP | $75.00 | CashApp |
| 91 | 04/06/2020 | BEEN | HOOKS | $220.00 | CashApp |
| 92 | 04/06/2020 | BEEN | HOOKS | $500.00 | CashApp |
| 93 | 04/24/2020 | BEEN | JOHNSON | $100.00 | CashApp |
| 94 | 04/30/2020 | BEEN | BALDWIN | $400.00 | PayPal |
| 95 | 05/01/2020 | BEEN | BALDWIN | $400.00 | PayPal |
| 96 | 05/12/2020 | BEEN | BALDWIN | $400.00 | PayPal |
| 97 | 05/12/2020 | BEEN | HARKINS | $605.00 | CashApp |
| 98 | 05/12/2020 | BEEN | HOOKS | $605.00 | CashApp |
| 99 | 05/15/2020 | BEEN | HARKINS | $416.00 | CashApp |
| 100 | 05/15/2020 | BEEN | HOOKS | $500.00 | CashApp |
| 101 | 05/22/2020 | BEEN | HOOKS | $265.00 | CashApp |
| 102 | 05/26/2020 | BEEN | HOOKS | $200.00 | CashApp |
| 103 | 06/01/2020 | BEEN | HOOKS | $510.00 | CashApp |
| 104 | 06/07/2020 | BEEN | HARKINS | $360.00 | CashApp |
| 105 | 06/08/2020 | BEEN | HARKINS | $1,000.00 | PayPal |
| 106 | 06/08/2020 | BEEN | HARKINS | $650.00 | PayPal |

| Count | Date | Payor | Payee | Amount | Payment Platform |
|---|---|---|---|---|---|
| 107 | 06/08/2020 | BEEN | HARKINS | $350.00 | CashApp |
| 108 | 06/09/2020 | BEEN | D. PAYNE | $2,602.00 | PayPal |
| 109 | 06/10/2020 | BEEN | HARKINS | $369.00 | PayPal |
| 110 | 06/11/2020 | BEEN | HOOKS | $400.00 | CashApp |
| 111 | 06/14/2020 | BEEN | GALLOWAY | $1,000.00 | PayPal |
| 112 | 06/17/2020 | BEEN | GALLOWAY | $840.00 | PayPal |
| 113 | 06/18/2020 | BEEN | GALLOWAY | $661.00 | PayPal |
| 114 | 06/19/2020 | BEEN | HOOKS | $205.00 | CashApp |
| 115 | 06/22/2020 | BEEN | HOOKS | $505.00 | CashApp |
| 116 | 06/22/2020 | BEEN | HARKINS | $250.00 | CashApp |
| 117 | 06/22/2020 | BEEN | GALLOWAY | $800.00 | CashApp |
| 118 | 06/23/2020 | BEEN | HARKINS | $782.00 | CashApp |
| 119 | 06/30/2020 | BEEN | HARKINS | $300.00 | CashApp |
| 120 | 07/03/2020 | BEEN | HARKINS | $300.00 | CashApp |
| 121 | 07/06/2020 | BEEN | HARKINS | $250.00 | CashApp |
| 122 | 07/15/2020 | BEEN | JOHNSON | $271.27 | CashApp |
| 123 | 07/21/2020 | BEEN | HOOKS | $315.00 | CashApp |
| 124 | 08/02/2020 | BEEN | HOOKS | $325.00 | CashApp |
| 125 | 08/03/2020 | BEEN | HOOKS | $205.00 | CashApp |
| 126 | 08/06/2020 | BEEN | JOHNSON | $200.00 | CashApp |
| 127 | 08/14/2020 | BEEN | JOHNSON | $190.00 | CashApp |
| 128 | 08/13/2020 | BEEN | HOOKS | $200.00 | CashApp |
| 129 | 08/19/2020 | BEEN | JOHNSON | $110.00 | CashApp |
| 130 | 08/19/2020 | BEEN | HOOKS | $300.00 | CashApp |
| 131 | 08/20/2020 | BEEN | JOHNSON | $90.00 | CashApp |
| 132 | 09/04/2020 | BEEN | JOHNSON | $200.00 | CashApp |
| 133 | 09/10/2020 | BEEN | JOHNSON | $50.00 | CashApp |
| 134 | 09/24/2020 | BEEN | JOHNSON | $500.00 | CashApp |
| 135 | 09/25/2020 | BEEN | J. OSBORNE | $1,000.00 | CashApp |
| 136 | 09/25/2020 | BEEN | CLAYSON | $300.00 | CashApp |
| 137 | 09/30/2020 | BEEN | JOHNSON | $1,000.00 | CashApp |
| 138 | 10/03/2020 | BEEN | CLAYSON | $60.00 | CashApp |
| 139 | 11/12/2020 | BEEN | JOHNSON | $225.00 | CashApp |
| 140 | 12/13/2020 | BEEN | J. OSBORNE | $1,000.00 | CashApp |
| 141 | 01/09/2021 | BEEN | J. OSBORNE | $1,400.00 | CashApp |
| 142 | 01/11/2021 | BEEN | ENLOE | $370.00 | CashApp |
| 143 | 01/13/2021 | BEEN | J. OSBORNE | $2,000.00 | CashApp |
| 144 | 01/25/2021 | BEEN | ENLOE | $657.00 | CashApp |

| Count | Date | Payor | Payee | Amount | Payment Platform |
|-------|------|-------|-------|--------|------------------|
| 145 | 01/28/2021 | BEEN | ENLOE | $162.00 | CashApp |
| 146 | 01/29/2021 | BEEN | J. OSBORNE | $1,900.00 | CashApp |
| 147 | 02/05/2021 | BEEN | ENLOE | $629.00 | CashApp |
| 148 | 02/05/2021 | BEEN | ENLOE | $100.00 | CashApp |
| 149 | 02/08/2021 | BEEN | ENLOE | $150.00 | CashApp |
| 150 | 02/10/2021 | BEEN | ENLOE | $260.00 | CashApp |
| 151 | 02/10/2021 | BEEN | JOHNSON | $165.00 | CashApp |
| 152 | 02/11/2021 | BEEN | ENLOE | $180.00 | CashApp |
| 153 | 02/14/2021 | BEEN | ENLOE | $412.00 | CashApp |
| 154 | 02/16/2021 | BEEN | ENLOE | $292.50 | CashApp |
| 155 | 02/18/2021 | BEEN | ENLOE | $150.00 | CashApp |
| 156 | 02/25/2021 | BEEN | ENLOE | $339.00 | CashApp |
| 157 | 03/01/2021 | BEEN | ENLOE | $425.00 | CashApp |
| 158 | 03/04/2021 | BEEN | ENLOE | $100.00 | CashApp |
| 159 | 03/07/2021 | BEEN | ENLOE | $350.00 | CashApp |
| 160 | 03/07/2021 | BEEN | ENLOE | $100.00 | CashApp |
| 161 | 03/08/2021 | BEEN | ENLOE | $100.00 | CashApp |
| 162 | 03/12/2021 | BEEN | ENLOE | $698.00 | CashApp |
| 163 | 03/25/2021 | BEEN | ENLOE | $100.00 | CashApp |
| 164 | 03/28/2021 | BEEN | ENLOE | $520.00 | CashApp |
| 165 | 04/02/2021 | BEEN | ENLOE | $150.00 | CashApp |
| 166 | 04/03/2021 | BEEN | ENLOE | $305.00 | CashApp |

All in violation of Title 18, United States Code, Section 1343.

## COUNT ONE HUNDRED SIXTY-SEVEN
### [18 U.S.C. § 1349]

93. The Grand Jury hereby incorporates and realleges paragraphs 1 through 92 of this Indictment.

94. From in or about January 2018 to the date of this Indictment, in the Northern District of Oklahoma and elsewhere, the defendants **JEFFREY ALLEN ABEL ("ABEL"), BRANDON JAMAL BALDWIN ("BALDWIN"), LINDA ANN BEEN ("BEEN"), AMERICA JABRIELLE VOSHA BROWN ("BROWN"), AMBER MARIE CLAYSON ("CLAYSON"), AMBER CHARDA CRAWFORD ("CRAWFORD"), TONI LARAE CRISP ("CRISP"), LATOYA EFFIE LAWSHAWN DUHART ("DUHART"), DEREK JAMES ENLOE ("ENLOE"), COREY RAY FIELDS ("FIELDS"), SHAREE  NASHAWN GALLOWAY ("GALLOWAY"), ASHLEY NICOLE GILL ("GILL"), BRITTANY NICOLE HARKINS ("HARKINS"), JESSICA MARIE HOOKS ("HOOKS"), STEPHEN ANTHONY JENNINGS ("JENNINGS"), AMANDA JOHNSON ("JOHNSON"), BILLY DON OSBORNE ("B. OSBORNE"), JUSTON PAUL OSBORNE ("J. OSBORNE"), DANIEL EUGENE PAYNE ("D. PAYNE"), TAILYR MAEGAN PAYNE ("T. PAYNE"), KARISSA RAY RUSSELL ("RUSSELL"), KATRINA DANIELLE ROBISON ("ROBISON"), and GE'RAE QUIN'SHAY THOMPSON ("THOMPSON")**, did knowingly and willfully conspire, confederate, and agree, with each other and others, known and unknown to the Grand Jury (collectively, the "Conspirators"), that is, to violate Title 18,

24

United States Code, Section 1343, by knowingly transmitting and causing to be transmitted, writings, signs, signals, pictures, and sounds by means of wire communications in interstate commerce after devising and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations and promises, as described below.

## THE PURPOSE OF THE CONSPIRACY

95.  The allegations of paragraph 7 of this Indictment are incorporated in this Count by reference.

## MANNER AND MEANS OF THE CONSPIRACY

96. The allegations in paragraphs 8 through 31 and 92 of this Indictment are incorporated in this Count by reference.

All in violation of Title 18, United States Code, Section 1349.

## COUNT ONE HUNDRED SIXTY-EIGHT
### [18 U.S.C. § 1956(h)]

97. The Grand Jury hereby incorporates and realleges paragraphs 1 through 96 of this Indictment.

### THE CONSPIRACY AND ITS OBJECTS

98. Beginning at least as early as in or about January 2018 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Northern District of Oklahoma and elsewhere, Defendants **LINDA ANN BEEN** and **BILLY DON OSBORNE** (the "Co-Conspirators"), and others, known and unknown to the Grand Jury, knowingly and willfully conspired to commit the following offenses against the United States: to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, and involving property which in fact involved the proceeds of specified unlawful activity (Interstate Transportation of Stolen Property and Wire Fraud) with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

### MANNER AND MEANS OF THE CONSPIRACY

99. The Co-conspirators used the following manner and means to achieve the objects of the conspiracy:

100.   The allegations of paragraphs 7 through 29 are incorporated in this Count by reference.

26

101.   On or about the dates and in the approximate amounts stated below, and with the intent to promote the carrying on of the offenses of Interstate Transportation of Stolen Property and Wire Fraud, **BEEN** and **B. OSBORNE** transferred and caused the transfer of proceeds derived from the commission of the offenses of Interstate Transportation of Stolen Property and Wire Fraud, from Tulsa Teacher Credit Union member account number xxxx52 (S14) by negotiating the following checks for cash:

| Date | Payor | Payee | Amount | Source |
|------|-------|-------|--------|--------|
| 06/19/2020 | **BEEN** | **B. OSBORNE** | $7,500.00 | Check 1027 |
| 07/03/2020 | **BEEN** | **B. OSBORNE** | $6,000.00 | Check 1029 |
| 07/13/2020 | **BEEN** | **B. OSBORNE** | $6,000.00 | Check 1030 |
| 07/21/2020 | **BEEN** | **B. OSBORNE** | $7,000.00 | Check 1034 |
| 07/24/2020 | **BEEN** | **B. OSBORNE** | $7,000.00 | Check 1035 |
| 07/28/2020 | **BEEN** | **B. OSBORNE** | $7,000.00 | Check 1038 |
| 07/31/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1039 |
| 08/03/2020 | **BEEN** | **B. OSBORNE** | $7,000.00 | Check 1040 |
| 08/06/2020 | **BEEN** | **B. OSBORNE** | $7,000.00 | Check 1041 |
| 08/07/2020 | **BEEN** | **B. OSBORNE** | $7,000.00 | Check 1042 |
| 08/13/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1043 |
| 08/14/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1045 |
| 08/27/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1046 |
| 08/28/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1047 |
| 09/11/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1048 |
| 09/17/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1049 |
| 09/29/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1076 |
| 10/02/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1077 |
| 10/07/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1078 |
| 11/09/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1082 |
| 11/12/2020 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1083 |
| 11/16/2020 | **BEEN** | **B. OSBORNE** | $4,000.00 | Check 1085 |
| 02/03/2021 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1053 |
| 02/12/2021 | **BEEN** | **B. OSBORNE** | $5,000.00 | Check 1054 |
| 03/11/2021 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1058 |
| 03/29/2021 | **BEEN** | **B. OSBORNE** | $2,500.00 | Check 1064 |

| Date | Payor | Payee | Amount | Source |
|------|-------|-------|--------|--------|
| 04/13/2021 | **BEEN** | **B. OSBORNE** | $8,000.00 | Check 1067 |
| 05/07/2021 | **BEEN** | **B. OSBORNE** | $8,500.00 | Check 1073 |

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT ONE HUNDRED SIXTY-NINE
### [18 U.S.C. § 1956(h)]

102.    The Grand Jury hereby incorporates and realleges paragraphs 1 through 101 of this Indictment.

### THE CONSPIRACY AND ITS OBJECTS

103.    Beginning at least as early as in or about January 2018 and continuing through approximately May 2021, the exact dates being unknown to the Grand Jury, in the Northern District of Oklahoma and elsewhere, Defendants **LINDA ANN BEEN ("BEEN")** and **JUSTON OSBORNE** (the "Co-Conspirators"), and others, known and unknown to the Grand Jury, knowingly and willfully conspired to commit the following offenses against the United States: to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, and involving property which in fact involved the proceeds of specified unlawful activity (Interstate Transportation of Stolen Property and Wire Fraud) with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

### MANNER AND MEANS OF THE CONSPIRACY

104.    The Co-conspirators used the following manner and means to achieve the objects of the conspiracy:

105.    The allegations of paragraphs 8 through 31 are incorporated in this Count by reference.

106.   On or about the dates and in the amounts stated below, and with the intent to promote the carrying on of the offenses of Interstate Transportation of Stolen Property and Wire Fraud, **BEEN** and **J. OSBORNE** transferred and caused the transfer of proceeds derived from the commission of the offenses of Interstate Transportation of Stolen Property and Wire Fraud, from Tulsa Teacher Credit Union member account number xxxx52 by negotiating the following checks:

| Date | Payor | Payee | Amount | Source |
|------|-------|-------|--------|--------|
| 02/23/21 | **BEEN** | **J. OSBORNE** | $8,000.00 | Check 1057 |
| 03/11/21 | **BEEN** | **J. OSBORNE** | $5,000.00 | Check 1059 |
| 03/22/21 | **BEEN** | **J. OSBORNE** | $9,320.00 | Check 1063 |
| 03/31/21 | **BEEN** | **J. OSBORNE** | $10,000.00 | Check 1065 |
| 04/13/21 | **BEEN** | **J. OSBORNE** | $10,000.00 | Check 1066 |
| 04/21/21 | **BEEN** | **J. OSBORNE** | $6,778.00 | Check 1069 |
| 05/04/21 | **BEEN** | **J. OSBORNE** | $3,550.00 | Check 1072 |

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT ONE HUNDRED SEVENTY through TWO HUNDRED FOURTEEN
### [18 U.S.C. § 1957(a)]

107.    The Grand Jury hereby incorporates and realleges paragraphs 1 through 106 of this Indictment.

108.    From in or about April 2019 through in or about May 2021, as stated below, in the Northern District of Oklahoma and elsewhere, the defendant **LINDA ANN BEEN,** knowingly engaged and attempted to engage in monetary transactions, as described below, in criminally derived property of a value greater than $10,000 and derived from specified unlawful activities. The specified unlawful activities were Interstate Transportation of Stolen Property in violation of Title 18, United States Code, Section 2314, and Sale or Receipt of Stolen Goods, in violation of Title 18, United States Code, Section 2315, and Wire Fraud, in violation of Title 18, United States Code, Section 1343.

109.    The monetary transactions described below were funds **BEEN** transferred from her Mobile Payment Service accounts to her personal financial institution accounts:

31

| Count | Date | Payment Platform | Deposit Amount | Financial Institution | Account |
|-------|------|------------------|----------------|-----------------------|---------|
| 170 | 04/22/19 | PayPal | $10,300.00 | TTCU | xxxx52 (S14) |
| 171 | 07/09/19 | PayPal | $17,990.00 | TTCU | xxxx52 (S14) |
| 172 | 07/25/19 | PayPal | $12,000.00 | TTCU | xxxx52 (S14) |
| 173 | 08/01/19 | PayPal | $19,990.00 | TTCU | xxxx52 (S14) |
| 174 | 12/06/19 | PayPal | $10,490.00 | Arvest Bank | xxxx6811 |
| 175 | 03/02/20 | PayPal | $11,990.00 | TTCU | xxxx52 (S14) |
| 176 | 03/09/20 | PayPal | $10,990.00 | TTCU | xxxx52 (S14) |
| 177 | 03/15/20 | PayPal | $10,990.00 | TTCU | xxxx52 (S14) |
| 178 | 04/08/20 | PayPal | $15,000.00 | TTCU | xxxx52 (S14) |
| 179 | 04/20/20 | PayPal | $20,000.00 | TTCU | xxxx52 (S14) |
| 180 | 05/01/20 | PayPal | $18,000.00 | TTCU | xxxx52 (S14) |
| 181 | 05/04/20 | PayPal | $12,000.00 | TTCU | xxxx52 (S14) |
| 182 | 05/28/20 | PayPal | $15,000.00 | TTCU | xxxx52 (S14) |
| 183 | 07/02/20 | Intuit | $34,920.25 | TTCU | xxxx52 (S14) |
| 184 | 07/21/20 | Intuit | $22,505.25 | TTCU | xxxx52 (S14) |
| 185 | 08/06/20 | Square Inc | $71,653.38 | TTCU | xxxx52 (S14) |
| 186 | 08/26/20 | Square Inc | $52,727.61 | TTCU | xxxx52 (S14) |
| 187 | 09/10/20 | Square Inc | $45,225.24 | TTCU | xxxx52 (S14) |
| 188 | 09/23/20 | Square Inc | $54,291.65 | TTCU | xxxx52 (S14) |
| 189 | 10/13/20 | Square Inc | $49,207.01 | TTCU | xxxx52 (S14) |
| 190 | 11/03/20 | Square Inc | $28,116.41 | TTCU | xxxx52 (S14) |
| 191 | 11/17/20 | Square Inc | $38,978.98 | TTCU | xxxx52 (S14) |
| 192 | 12/03/20 | Square Inc | $21,423.30 | TTCU | xxxx52 (S14) |
| 193 | 12/09/20 | Square Inc | $20,525.18 | TTCU | xxxx52 (S14) |
| 194 | 12/17/20 | Square Inc | $18,734.42 | TTCU | xxxx52 (S14) |
| 195 | 12/22/20 | Paypal | $15,870.44 | TTCU | xxxx52 (S14) |
| 196 | 12/28/20 | Square Inc | $21,255.38 | TTCU | xxxx52 (S14) |
| 197 | 01/06/21 | Square Inc | $22,932.96 | TTCU | xxxx52 (S14) |
| 198 | 01/13/21 | Square Inc | $16,315.11 | TTCU | xxxx52 (S14) |
| 199 | 01/27/21 | Square Inc | $18,078.45 | TTCU | xxxx52 (S14) |
| 200 | 02/02/21 | Square Inc | $13,865.77 | TTCU | xxxx52 (S14) |
| 201 | 02/04/21 | Square Inc | $10,782.41 | TTCU | xxxx52 (S14) |
| 202 | 02/10/21 | Square Inc | $15,543.65 | TTCU | xxxx52 (S14) |
| 203 | 02/23/21 | Square Inc | $33,583.38 | TTCU | xxxx52 (S14) |
| 204 | 03/03/21 | Square Inc | $22,458.38 | TTCU | xxxx52 (S14) |
| 205 | 03/11/21 | Square Inc | $26,918.92 | TTCU | xxxx52 (S14) |
| 206 | 03/22/21 | Square Inc | $11,651.70 | TTCU | xxxx52 (S14) |
| 207 | 03/23/21 | Square Inc | $39,892.45 | TTCU | xxxx52 (S14) |
| 208 | 03/31/21 | Square Inc | $35,814.24 | TTCU | xxxx52 (S14) |

| Count | Date | Payment Platform | Deposit Amount | Financial Institution | Account |
|-------|------|------------------|----------------|----------------------|---------|
| 209 | 04/13/21 | Square Inc | $27,915.40 | TTCU | xxxx52 (S14) |
| 210 | 04/21/21 | Square Inc | $20,854.30 | TTCU | xxxx52 (S14) |
| 211 | 05/04/21 | Square Inc | $28,340.47 | TTCU | xxxx52 (S14) |
| 212 | 05/07/21 | Square Inc | $19,521.11 | TTCU | xxxx52 (S14) |
| 213 | 05/14/21 | Square Inc | $15,303.82 | TTCU | xxxx52 (S14) |
| 214 | 05/17/21 | Square Inc | $14,564.70 | TTCU | xxxx52 (S14) |

All in violation of 18 U.S.C. § 1957(a).

## FORFEITURE ALLEGATION
### [18 U.S.C. §§ 981(a)(1)(c) and 982(a) and 28 U.S.C. § 2461]

The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(c) and 982(a) and Title 28, United States Code, Section 2461.

Upon conviction of the offenses alleged in this Indictment, as a part of their sentences, the defendants, **LINDA ANN BEEN ("BEEN"), JEFFREY ALLEN ABEL ("ABEL"), BRANDON JAMAL BALDWIN ("BALDWIN"), AMERICA JABRIELLE VOSHA BROWN ("BROWN"), AMBER MARIE CLAYSON ("CLAYSON"), AMBER CHARDA CRAWFORD ("CRAWFORD"), TONI LARAE CRISP ("CRISP"), LATOYA EFFIE LAWSHAWN DUHART ("DUHART"), DEREK JAMES ENLOE ("ENLOE"), COREY RAY FIELDS ("FIELDS"), SHAREE NASHAWN GALLOWAY ("GALLOWAY"), ASHLEY NICOLE GILL ("GILL"), BRITTANY NICOLE HARKINS ("HARKINS"), JESSICA MARIE HOOKS ("HOOKS"), STEPHEN ANTHONY JENNINGS ("JENNINGS"), AMANDA JOHNSON ("JOHNSON"), BILLY DON OSBORNE ("B. OSBORNE"), JUSTON PAUL OSBORNE ("J. OSBORNE"), DANIEL EUGENE PAYNE ("D. PAYNE"), TAILYR MAEGAN PAYNE ("T. PAYNE"), KARISSA RAY RUSSELL ("RUSSELL"), KATRINA DANIELLE ROBISON ("ROBISON"),** and **GE'RAE QUIN'SHAY THOMPSON ("THOMPSON"),** shall forfeit to the United States, any property

34

constituting, or derived from, or traceable to, the proceeds obtained, directly or indirectly, as a result of such violations, and any property, real or personal, that was used or intended to be used to commit or to facilitate the violation of federal law. The property to be forfeited includes, but is not limited to:

**MONEY JUDGMENT**

1. A money judgment in an amount representing proceeds obtained by each Defendant as a result of the offenses;

**REAL PROPERTY**

2. All that lot and parcel of land, together with all buildings, appurtenances, improvements, fixtures, attachments and easements thereon, and all rights appertaining thereto, located at 1098 South County Road 1575, Osage County, Oklahoma, more particularly described as the east half of the southwest quarter (E/2 of SW/4) lying west of County Road 1575 in Section Thirty-five (35), Township Twenty-one (21) North, Range Nine (9) East of the Indian Meridian, Osage County, Oklahoma;

**CURRENCY**

3. All U.S. currency, funds and other monetary instruments credited to or seized from Tulsa Teacher Credit Union Member Number xxxx52 (S14) account;

**PERSONAL PROPERTY**

4. A 2012 Chevrolet Sonic, VIN 1G1JC6SH4C4132704;

5. A 2018 Chevrolet Cruze, VIN 3G1BE6SM1JS552221;

6. A 2009 Cadillac Escalade, VIN 1GYFK13209R264202;

7. A 2014 Chevrolet Silverado, VIN 3GCUKSECXEG246955;

8. A 2016 Chvrolet Silverado 3500, 1GC4K1E89GF241594;

9. A 2008 Chevrolet Silverado, VIN 1GCEC14X08Z323238;

10. A 2018 Harley Davidson FLHX motorcycle, VIN 1HD1KBC16JB664774;

11. A 2016 Jayco travel trailer, VIN 1UJBJ0BT2G1T90200; and

12. A 2020 Jayco Pinnacle luxury fifth wheel, situated on the property at 1098 South County Road 1575, Osage County, Oklahoma, and owned by **BEEN**.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1028(g), and Title 28, United States Code, Section 2461(c), the defendants shall forfeit substitute property, up to the value of the property described above if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(c) and 982(a) and Title 28, United States Code, Section 2461.

CLINTON J. JOHNSON
Acting United States Attorney

A TRUE BILL

_____
RICHARD M. CELLA
Assistant United States Attorney

_/s/ Grand Jury Foreperson_____
Grand Jury Foreperson