UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LINDA ANN BEEN<br><br>Defendant. | Case No. 21-CR-493-003-GKF |

**Government's Sentencing Memorandum**

## I. Introduction

The government submits the following sentencing memorandum for the Court's consideration. Pursuant to 18 U.S.C. § 3553(a) and Section 6A1.2 of the United States Sentencing Guidelines and Policy Statements, the government has reviewed the Probation Office's presentence report in this matter, and does not dispute any of its facts.

## II. Relevant Facts

Operation Booster Buster was a national investigation targeting a retail theft ring and its conspiracy to distribute stolen property throughout the country. Been, the leader of the conspiracy, paid boosters to steal property from various retail stores, including Walmart, Sam's Club, CVS, Walgreens, and others. The property targeted for theft typically included over-the-counter medications, health and beauty products, razors, and other miscellaneous items. Been then sold and shipped the stolen property to various fencing operations outside of Oklahoma. The fencing operations

then sold the stolen property through online platforms for a considerable profit. The investigation revealed that Been's conspiracy was responsible for approximately $9 million in stolen property from victim retailers.

### III. Statement in Support of a Sentence under 18 U.S.C. § 3553(a)

"A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id*. In calculating the appropriate advisory guideline range, the district court should consider all relevant conduct proven by a preponderance of the evidence. Relevant conduct under the Guidelines thus "comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct." *United States v. Altamirano-Quintero*, 511 F.3d 1087, 1095 (10th Cir.2007) (citation and internal quotation marks omitted). After determining the applicable advisory Guideline range, the district court must then consider the sentencing factors pursuant to 18 U.S.C. § 3553(a) to shape an appropriate sentence. *See United States v. Allen*, 488 F.3d 1244, 1252 (10th Cir.2007).

A guideline sentence provides for a sentence that satisfies the factors of 18 U.S.C. § 3553(a); yet, does not represent a sentence unmoored from the recommendations of the Sentencing Guidelines. The nature of Been's criminal history and leadership conduct in this case warrants a sentence of no less than her subordinate co-conspirators.

a. **Nature and Circumstances of the Offense**

In 2016, Linda Been began selling miscellaneous items on eBay under the account named "Super C Deals". Been sold a nominal amount of products on eBay. But as the supply of stolen products from retail stores grew from shoplifters ("boosters"), Been began selling exclusively to national fencing operations who would resell the products for profit. Not only did Been recruit local individuals (mostly drug addicts) to become boosters, but she would provide boosters with tools and direct them on where to shoplift, what products to steal and effective ways to steal to avoid detection, such as "box stuffing" where items would be placed inside a larger product box that was sold much cheaper and the booster would pay for the cheaper item. On some occasions, once boosters left the store with the stolen items, they would return the larger/cheaper item for a refund.

Been would pay the boosters for the stolen products with cash or through a mobile payment platform, such as CashApp, Venmo or PayPal, some boosters as much as $40,000. Once Been acquired the stolen products, she packaged them in shipping boxes, prepared invoices, and sent the boxes (sometime as much as a pallets) to the fencing operations through national freight companies. Over the course of the conspiracy, when boosters were arrested for larceny or other related charges, Been would provide them money on the jail accounts or pay their bonds to ensure they would not cooperate with law enforcement and to allow them to continue to steal.

Been purchased millions of dollars' worth of stolen retail property from dozens of

3

boosters and resold it to fencing operations around the country. The fencing operations sold the stolen retail property through online sales platforms (like Amazon or eBay) for considerable profit. Through the investigation, it was determined that fencing operations would sell a product for its average retail price, after paying Been about half of the retail price. Been would pay her boosters half of what she received from the fencers or about a fourth of the retail price. The investigation revealed Been received approximately $4.5 million from fencing operations – an estimated $9 million worth of retail products. Most of the proceeds from the operation were spent frivolously and recovery has been futile.

In time, Been and Billy Osborne began a romantic relationship and Osborne began assisting the criminal operation. Eventually Osborne was involved in all aspects of the retail theft operation. As business exploded, Been and Osborne outgrew their residential storage unit. To keep up with the excessive supply of stolen products being delivered around the clock to their house, Been and Osborne rented a warehouse and opened C&B Welding in Sand Springs along with Osborne's friend and co-conspirator Corey Fields, to maintain the stolen property. The commercial property was primarily being used to store stolen property and prepare it for shipping to the fencing operations. The inserted photograph shows  Osborne preparing a pallet for shipping. The pallet depicted in the above photograph would typically contain approximately $70,000 of stolen products.

As Been's retail theft operation expanded, she enlisted the aid of her family and friends. Not only was Osborne's ex-wife a booster, but his daughter also assisted with maintaining inventory records and preparing shipping documents for Been. Been's adult son, daughter, and son-in-law also assisted the operation. Osborne's cousin, Juston Osborne, was eventually recruited to receive and store stolen property at his Sand Springs residence and to pay boosters for the stolen products.

### b. History and characteristics of the defendant

According to the PSR, Been has nominal involvement in the criminal justice system. While many of her criminal cases have related to drugs offenses, she has several convictions that have led to her incarceration.

### c. The need for the sentence to reflect seriousness of the offense, respect for the law, provide just punishment, deter future criminal conduct by defendant and others, and to protect the public from further crimes of the defendant

In an effort to abate similar conduct in the future, this Court should impose a sentence that will serve as a warning to individuals considering similar conduct. A term of supervised release and a substantial fine should appropriately deter comparable activities, sending the message that such behavior is unacceptable and will be adjudicated harshly within the Northern District of Oklahoma. Additionally, a lengthy term of supervised release would also ensure sufficient time for payment of any ordered restitution.

It should be noted that around the time business was booming for Been and her co-conspirators, the world was experiencing a global pandemic. Individuals and

businesses were navigating how to exist within the confines of new social norms. Individuals and families were feeling the economic and psychological stresses. Retail businesses were suffering. Reported incidents of shoplifting were soaring across the country and in Tulsa. There was growing attention to individuals going into local retail stores – like CVS, Walmart, Target and Walgreens – and stealing over-the-counter products. Store surveillance footage of masked individuals loading up purses or bags with bulk quantities of products was constantly in the paper and on the nightly news. And seated at the head of the Tulsa operation, creating the demand, was Linda Been and her associates.

## IV. Conclusion

A sentence of incarceration with supervised release, restitution and a fine will reflect the seriousness of the offense, provide sufficient punishment and adequate deterrence, and will protect the public.

Respectfully submitted,
CLINTON J. JOHNSON
United States Attorney

*/s/ Reagan V. Reininger*
Reagan V. Reininger, OBA #22326
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, OK  74119
Telephone:  918.382.2700
Facsimile:  918.560.7939

### Certificate of Service

I certify that on April 8, 2024, I electronically transmitted the foregoing to the Clerk of the Court using the ECF System for filing, which will send notification of that filing to the following ECF registrant:

    Marna Franklin
    *Counsel for Defendant*

*/s/ Reagan V. Reininger*
Reagan V. Reininger
Assistant United States Attorney
